## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

**CIVIL ACTION NO. 3:21CV-00742-JHM**

**ANTHONY CAIN**                                                                **PLAINTIFF**

**V.**

**SGT. EVANS,** *et al.*                                                **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on cross-motions for summary judgment pursuant to Fed. R. Civ. P. 56. [DN 145, DN 174]. Plaintiff also recently filed a renewed motion to order all admissions admitted [DN 169] and a motion for immediate ruling on the summary judgment motions. [DN 176]. Fully briefed, these matters are ripe for decision.

### I. BACKGROUND

Plaintiff Anthony Cain filed this *pro se* civil-rights action under 42 U.S.C. § 1983 while incarcerated as a convicted prisoner at Kentucky State Reformatory ("KSR"). [DN 1]. Plaintiff names as Defendants the following KSR officers: Sgt. Thomas Evans, Lt. Dana Penniger, Lt. Kiester, Sgt. Boles, Officer Young, Officer Ellis, Officer Goulding, Officer West, Lt. Howard, Officer Collman, Sgt. Crawford, Sgt. Haywood, Lt. Riley, Sgt. Morris, Lt. Nolan, Sgt. Danclay, Head of Security Major Travis St. Clair, and Warden Anna Valentine. [DN 1; DN 32]. Plaintiff alleges that these Defendants were deliberately indifferent to his health and safety in violation of the Eighth Amendment to the United States Constitution by locking him in a prison dormitory and leaving him unattended with other inmates. Specifically, Plaintiff asserts that Defendants are "on camera locking me & other inmates in buildings/dorms at KSR with no officer in the building while guarding multiple dorm/buildings at the same time [recklessly] endangering my life and 100

other inmate[s] in Dorm 7 and their own officers." [DN 32 at 4]. As a result of the conditions, Plaintiff alleges that multiple inmates threatened and extorted him, including "Inmate Jerry Brown [who] threatened to assault me and come in my room and kill me" [DN 1 at 4] and a serial killer [DN 32 at 4].

Plaintiff also claims that he was "injured" in September 2021 and lay "hurt in the floor for hours" because no officer was in the dorm; that many inmates have been beaten with no officer in the dorm; and that Defendant Collman, herself, was assaulted one night. [DN 32 at 5]. He asserts that while at KSR he lived under a constant threat of excessive risk to his health and safety and that Defendants caused intentional and wanton infliction of emotional distress and pain and suffering. [*Id.* at 6]. As relief, Plaintiff originally sought monetary and punitive damages and an injunction forcing the Kentucky Department of Corrections ("KDOC") "to put 2 required officers in each dorm building."

On initial review of the complaint and amended complaint pursuant to 28 U.S.C. § 1915A, the Court allowed the following claims to proceed – the Eighth Amendment claim of deliberate indifference to Plaintiff's safety against all Defendants in their individual capacities for damages and a state-law claim of intentional infliction of emotional distress against all Defendants. [DN 125]. The Court also granted, in part, Plaintiff's Motion to Add Claims/Supplement the Pleadings to allow a First Amendment retaliation claim to proceed against Defendant Lt. Howard in his individual capacity for damages. [*Id.*; *see also* DN 76]. Additionally, because Plaintiff had been released from state custody, the Court dismissed his claims for injunctive relief asserted in both the complaint and amended complaint. [DN 125].

The parties have now filed cross-motions for summary judgment. [DN 145, DN 174].

2

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

The fact that a plaintiff is *pro se* does not lessen his obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted). When opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings, and a party's "status as a pro se litigant does not alter his

3

duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion"). However, statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

### III. DISCUSSION

#### A. Requests for Admissions

Plaintiff argues that summary judgment should be granted in his favor because Defendants failed to timely respond to Plaintiff's requests for admissions and, therefore, have in fact admitted "to all Plaintiff's accusations in the complaint and amended complaint." [DN 145; *see also* DN 170]. In addition to this argument contained in his motion for summary judgment, Plaintiff also filed a renewed motion to order all admissions admitted. [DN 169]. For the reasons previously set forth in the Court's November 13, 2023, Order, the Court denies Plaintiff's renewed motion [DN 169] and denies Plaintiff's motion for summary judgment based on this argument.

#### B. 42 U.S.C. § 1983

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Kentucky Dep't of Corrections*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

"Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### 1. Eighth Amendment Deliberate Indifference

The Eighth Amendment requires that prison officials "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To establish an Eighth Amendment claim against prison officials based on their failure to protect the plaintiff from harm, a plaintiff must present evidence showing that the defendant's conduct amounted to "deliberate indifference" to a known risk of harm. *Id.* at 837; *see also Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997). "The Eighth Amendment protects prisoners only from that conduct which is 'repugnant to the conscience of mankind.'" *Rafferty v. Trumbull Cnty., Ohio*, 915 F.3d 1087, 1094 (6th Cir. 2019) (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010)).

Deliberate indifference includes both objective and subjective elements. *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011). The objective element requires the harm to be "sufficiently serious." *Curry*, 249 F.3d at 506 (quoting *Farmer*, 511 U.S. at 834). Therefore, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* The subjective element focuses on whether prison officials know that inmates face a substantial risk of harm and "disregard[ ] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Prison officials must exhibit more than lack of due care for a prisoner's health or safety before an Eighth Amendment violation will be found. *Id.* at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. It is not enough that the official "should" have perceived a significant risk but did not. *Id.*

First, Plaintiff claims that it is a violation of Kentucky Department of Corrections Policies and Procedures and KSR's policies to not always have two correctional officers on duty in one dormitory. [DN 145, DN 177, DN 178]. Plaintiff argues that Defendants' failure to follow these policies and procedures establish deliberate indifference to Plaintiff's safety in violation of the Eighth Amendment and entitle him to summary judgment.

However, contrary to Plaintiff's argument, the failure of prison officials to follow institutional policies or procedures does not give rise to a constitutional claim. *Sandin v. Conner*, 515 U.S. 472, 481–82 (1995); *Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010) ("It has long been established that the violation of a state statute or regulation is insufficient alone to make a claim cognizable under § 1983."); *Johnson v. Young*, No. 3:21-CV-P411-GNS, 2021 WL 5567307, at *3–4 (W.D. Ky. Nov. 29, 2021) (citing *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995) (stating that mandatory language in prison regulations does not create a liberty interest protected by the due process clause); *Barhite v. Brown*, No. 1:14-CV-218, 2014 WL 2918550, at *16 (W.D. Mich. June 26, 2014) ("a violation of prison policy does not give rise to a claim in itself"); *Wiley v. Kentucky Dep't of Corr.*, No. 11-97-HRW, 2012 WL 5878678, at *12 (E.D. Ky. Nov. 21, 2012) ("While the violation of a prison policy may constitute negligence in some cases, it does not amount to a constitutional violation."); *Miles v. Antonini*, No. 04-CV-74147, 2006 WL 1522616, at *2 (E.D. Mich. May 30, 2006) ("the failure to follow a prison policy does not amount to a constitutional violation")).

Second, Plaintiff maintains that prisoners in a mental health observation unit belong to an identifiable group of prisoners who are at risk of substantial harm and the absence of officers from their post "could be" deliberate indifference to inmate safety. [DN 145 at 4]. Specifically, Plaintiff argues that Defendants admitted to leaving the unit unattended and guarding multiple dorm units

at the same time. [DN 145 at 4]. Plaintiff submits numerous daily logs he sent to Linda Carlson with KSR through JPay identifying when he believes his dorm, Dorm 7, and others were left unattended by correctional officers, noting both the time and the officer. [DN 145-3; DN 145-4]. As a result of this conduct, Plaintiff alleges that he was threatened and extorted by inmates to pay for protection because of the lack of officers in the dorms. [DN 1 at 4; DN 32 at 4]. Plaintiff also alleges that an inmate threatened to assault him and come into to his room to kill him. [*Id*.]. Finally, Plaintiff claims that he was threatened and extorted and "even threatn to be kill in ah mental health unit with no officers living under constant threat and suffering the depervation of life nessieteys daily." [DN 145 at 5].

The Court finds that these allegations and arguments fail to show that Defendants were deliberately indifferent to Plaintiff's safety because Plaintiff has not offered any evidence that he made Defendants aware of the purported threats or extortion made against him or that any of the threats were acted upon. *See*, *e.g.*, *Little v. Eerdmans*, No. 1:22-CV-697, 2023 WL 3984818, at *2 (W.D. Mich. May 23, 2023) (summary judgment granted where defendant asserts that he "had no knowledge of any threats to [Plaintiff's] safety" and plaintiff has presented no evidence to the contrary); *Storey v. Schofield*, No. 14-1098-JDT-EGB, 2016 WL 1421011 (W.D. Tenn., Apr. 8, 2016) (no Eighth Amendment violation where the complaint did not allege that any defendant knew a certain inmate would harm the plaintiff but had been told that the inmate had violent tendencies); *Glombowski v. Beardslee*, No. 1:14-CV-870, 2014 WL 6686599, at *3 (W.D. Mich. Nov. 26, 2014) (no deliberate indifference where the plaintiff did not allege that he told defendant that "his cell-mate had threatened him or that his cell-mate had a history of attacking others"). Significantly, in none of the JPay daily logs submitted by Plaintiff does he notify KSR officials of

any harm or threatened harm to him personally.[1]  As such, Plaintiff offers no evidence to support his claim that the prison staff "was subjectively aware of the risk" to inmates for assault or extortion and "disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

Third, the Court next turns to Plaintiff's allegation that Defendant Kiester's failure to discover him for "hours" after he had fallen on September 5, 2021, during which time he was "hurt and suffering," demonstrates that Defendant Kiester was deliberately indifferent to Plaintiff's safety because he left the dorm unattended. [DN 145 at 4].  In support of this claim, Plaintiff submits affidavits of fellow inmates that reflect that these inmates observed Plaintiff slip and fall and/or Plaintiff laying on the floor on September 5. [DN 145-1].  Plaintiff also submits a JPay notification that he fell in Dorm 7 and was not found for two hours.[2]  [DN 145-4 at 2].

Plaintiff fails to allege or prove that Defendant Kiester had any specific reason to believe that any harm would befall Plaintiff during the time his cell was left unattended. *Farmer*, 511 U.S. at 847.  Plaintiff also fails to set forth evidence that he suffered any serious injury because of falling and not being discovered by Defendant Kiester for approximately two hours. *See*, *e.g.*, *Griffin v. Derosa*, No. 03-5597 (RBK), 2004 U.S. Dist. LEXIS 32057 (D.N.J. June 4, 2004).  Plaintiff offers no hospital or treatment records, medical bills, KSR incident reports, or documentation demonstrating that he sustained or requested treatment for any injury on September 5, 2021.

---

[1] Plaintiff submitted a JPay notification indicating that he heard that Sgt. Breton was assaulted in another dorm, Dorm 9. [DN 145-3 at 21].  Plaintiff also submits a personal declaration attached to his summary judgment motion that an inmate in Dorm 9 was allegedly beaten. [DN 145-3 at 14].  Neither of these two alleged incidents rises to a level of "longstanding, pervasive, well-documented" inmate attacks that could substitute for actual knowledge of impending harm to Plaintiff personally. *Farmer*, 511 U.S. at 842–43.

[2] Plaintiff also submits a JPay notification that on May 29, 2022, his mother had to summon medical care for another inmate in Dorm 7 with a medical crisis. [DN 145-3 at 21].  Given this incident occurred nine months after Plaintiff's alleged fall, it would not serve as notice that Defendants had any reason to believe that Plaintiff would suffer harm because of their guarding multiple dorms.

Additionally, summary judgment in favor of Defendants is likewise warranted on Plaintiff's claims against Defendants for not ensuring that there is always a guard in his dorm. *See Ford v. Alexander*, No. 5:11CV575, 2013 WL 978209, at *10 (N.D. Ohio Feb. 22, 2013) (holding that the alleged failure of a jail supervisor to "staff and supervise [a] pod" constitutes negligence and "cannot [serve] as a basis for constitutional relief because negligence does not rise to the level of deliberate indifference actionable under the Eighth Amendment") (citing *Sullivan v. Graham*, No. 09-CV-1311 (TJM/DRJ), 2011 WL 4424355, at *8 (N.D.N.Y. Aug. 5, 2011) (negligent failure to staff recreational yard at prison did not rise to the level of deliberate indifference under the Eighth Amendment)).

### 2. First Amendment Retaliation

Plaintiff alleges that Defendant Howard retaliated against him by finding him guilty of disciplinary violations. Plaintiff claims that "[o]n 4-26-22, I was called to court call by Defendant Lt. Howard he does in fact know he is a defendant in this action. . . . Lt. Howard retaliated against me in court call after he was presented with medical evidence and he should have dismissed write ups." [DN 76 at 1].

Retaliation based upon a prisoner's exercise of his constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* A plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v.*

9

*Doyle*, 429 U.S. 274, 287 (1977)). If the plaintiff establishes "'his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant,' who may prevail on summary judgment by showing that 'he would have taken the same action in the absence of the protected activity.'" *Vaughn v. Underwood*, No. 3:20-CV-P317-RGJ, 2022 WL 4693908, at *2 (W.D. Ky. Sept. 30, 2022) (quoting *Thaddeus-X*, 175 F.3d at 399).

While both parties agree that Plaintiff was engaged in constitutionally protected conduct of filing litigation at the time he received the disciplinary action against him, Plaintiff fails to establish the third factor necessary for a retaliation claim—that the disciplinary action taken against him was connected to any such protected conduct. The record reflects that Defendant Howard presided over an adjustment hearing involving two disciplinary write-ups against Plaintiff. Specifically, on January 5, 2022, a KSR correctional officer charged Plaintiff with the institutional violation of "making threatening or intimidating statements" for sending a message through the KSR's JPay system to KSR Warden Anna Valentine and Internal Affairs Captain Jeromy Ball threatening another inmate. [DN 174-2]. Plaintiff admitted to correctional officers that he sent the message. [*Id.*]. On March 17, 2022, a KSR correctional officer charged Plaintiff with the same institutional violation for making threatening statements about setting Nursing Supervisor John Halford on fire during a telephone call that was recorded. [DN 174-3]. When Plaintiff was confronted with the threatening statement, Plaintiff denied making any such statement on the phone and stated that "the constitution prevents people with mental health illness from punishment or action caused or influenced by there mental illness." [*Id.*]. After reviewing the evidence, Defendant Howard found Plaintiff guilty of both violations at the disciplinary proceeding. [DN 174-4].

Plaintiff offers no evidence that suggests that previous litigation against Defendant Howard drove his motive for placing Plaintiff in segregation following the incidents in January and March 2022. Because Plaintiff was given ample time by the Court to conduct discovery and still has not offered specific evidence to support his bare allegations of retaliation, he has not shown a genuine dispute of material fact.

### C. State Law Claim

Having dismissed Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over his state-law claim. *See* 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim" in situations when "the district court has dismissed all claims over which it has original jurisdiction."); *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) (holding that "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."). Accordingly, the Court will dismiss Plaintiff's state-law claim without prejudice.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** as follows:

(1) Plaintiff's motion for summary judgment [DN 145] is **DENIED**.

(2) Defendants' motion for summary judgment [DN 174] is **GRANTED**. All federal claims against all Defendants are dismissed with prejudice. Plaintiff's remaining state-law claim is dismissed without prejudice.

(3) Plaintiff's renewed motion to order all admissions admitted [DN 169] is **DENIED** and Plaintiff's motion for immediate ruling on the summary judgment motions [DN 176] is **DENIED as moot**.

(4)  The Court will enter a Judgment consistent with this Memorandum Opinion and Order.

Date: February 20, 2024

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:     Plaintiff, *pro se*
        Counsel of Record
4414.014

12